

Case 1:18-cr-00018-CCB   Document 62   Filed 10/03/18   Page 1 of 12

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Dana J. Brusca*
*Assistant United States Attorney*
*Dana.Brusca@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4842
MAIN: 410-209-4800
FAX: 410-962-9293

July 25, 2018

**VIA EMAIL**
Jonathan Van Hoven, Esq.
The Law Offices of Warren A. Brown, P.A.
711 St. Paul Street
Baltimore, MD 21202
(410) 685-4900

    Re:    United States v. Robert Swain,
              Criminal No. CCB-18-018 (D. Md.)

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Robert Swain (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by August 14, 2018, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1. The Defendant agrees to plead guilty to Count 6 of the Superseding Indictment, which charges the Defendant with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). The Defendant admits that the Defendant is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense(s)

2. The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are that on or about the time alleged in the Superseding Indictment, in the District of Maryland:

    a.    the Defendant and at least one other person entered into an agreement;

    b.    the purpose of the agreement was to conduct a financial transaction involving the proceeds of a specified unlawful activity with the intent to conceal or disguise the source, nature, location, ownership, or control of the proceeds of the unlawful activity;

Rev. May 2018                                    1

c. the Defendant knew that the funds involved in the financial transaction were the proceeds of some form of unlawful activity; and

d. the Defendant knowingly and voluntarily joined in the agreement.

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|---|---|---|---|---|---|---|
| 6 | 18 U.S.C. § 1956(h) | N/A | 20 years | 3 years | $500,000 or 2x the value of the property involved, whichever is greater | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant

exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the

case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     a.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that the applicable United States Sentencing Guidelines ("U.S.S.G.") is § 2S1.1(a)(2). Accordingly, the following guidelines apply:

      (i)     Pursuant to U.S.S.G. § 2S1.1(a)(2), the base offense level is **8**.

      (ii)     The offense level is increased by **14** levels pursuant to U.S.S.G. § 2S1.1(a)(2) and 2B1.1(b)(1)(G) because the amount involved in the offense that was reasonably foreseeable to the Defendant was at least $550,001.

      (iii)     The offense level is increased by **6** levels pursuant § 2S1.1(b)(1)(i) because the Defendant knew or believed that the laundered funds were the proceeds of or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance.

(iv) The offense level is increased by **2** levels pursuant to § 2S1.1(b)(2)(B) because the Defendant will be convicted under 18 U.S.C. § 1956.

(v) The offense level is increased by **2** levels pursuant to § 2S1.1(b)(3) because the offense involved sophisticated laundering.

(vi) The offense level is decreased by **2** levels pursuant to § 3B1.2(b) because the Defendant had a minor role in the offense, resulting in an **adjusted offense level of 30**.

(vii) <u>Downward Departure and/or Variance</u>. Notwithstanding the above subparagraphs, this Office and the Defendant agree that a downward departure and/or variance of up to 16 levels is appropriate in this case.

A downward departure is appropriate pursuant to § 5K2.0(a)(1)(A) and 5K2.0(a)(2) because, if the Defendant were responsible for the underlying drug offense and he were subject to U.S.S.G. § 2S1.1(a)(1) rather than § 2S1.1(a)(2), his **adjusted offense level would be 14**:

- he would have a base offense level of **12** pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(14) because he was part of a conspiracy to manufacture, distribute, and possess with the intent to distribute more than 80,000 units of alprazolam, a Schedule IV controlled substance;

- the offense level would be increased by **2** levels pursuant to § 2S1.1(b)(2)(B) because the Defendant will be convicted under 18 U.S.C. § 1956;

- the offense level would be increased by **2** levels pursuant to § 2S1.1(b)(3) because the offense involved sophisticated laundering; and,

- the offense level would be decreased by **2** levels pursuant to § 3B1.2(b) because the Defendant had a minor role in the offense.

This Office and the Defendant agree that the Sentencing Guidelines for Money Laundering offenses fail to recognize that there might be circumstances, such as those presented in this case, where a Defendant is culpable under the Guidelines for only the money laundering portion of a crime, but would be subjected to a substantially lower guidelines range if he were also culpable for the underlying drug offense.

This Office and the Defendant further agree that, even if a downward departure were not appropriate, a downward variance pursuant to 18 U.S.C. § 3553(a) would be warranted, among other reasons, to account for the Defendant's minimal criminal history and the comparative culpability of the Defendants.

b. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. If the Defendant's adjusted offense level as determined by the Court is an offense level 21 or higher, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance

of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.  At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

    b.  The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

    (i) The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

    (ii) This Office reserves the right to appeal any sentence below a statutory minimum; and

  c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

11. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses, which the Defendant agrees is at least $30,000 in U.S. Currency.

  b. Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items, which the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

- the 77,285.81836727 DigiByte, valued at approximately $4,386.13, seized from 19621 Middletown Road, Freeland, Maryland, on January 16, 2018, pursuant to the execution of a federal search and seizure warrant at (Asset ID No. 18-DEA-639486);
- any and all digital currencies that are stored on any electronic device seized from 19621 Middletown Road;
- any and all assets (e.g., fiat and digital currencies) stored in any online account controlled by the Defendant, including but not limited to any BitPay, Binance, Bitstamp.net, PayPal, and Tradesatoshi account(s).

  c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

  d. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of

the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

  e. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Disposition of Property.

12. a. The Defendant understands that items of contraband seized by the government in connection with this case will not be returned. Contraband includes: drugs; drug paraphernalia; counterfeit goods; stolen, counterfeit, or fraudulently obtained identification documents or access devices; personal identity information; personal or corporate financial information; personal health information; child pornography; and, any other images, objects, or information that it is illegal for the Defendant to possess or that the Defendant did not have authority to possess whether in tangible or digital form. Electronics containing contraband shall be treated as contraband. The Defendant consents to the destruction of all contraband.

  b. The Defendant further understands and agrees that, as a convicted felon, he will have no right to possess firearms, grenades, explosives, and destructive devices, either actually or constructively. The Defendant consequently waives and abandons all of his right, title, and interest in any firearms, explosives, destructive devices, grenades, and ammunition seized from him, and the Defendant waives and releases any claim that the Defendant might otherwise have made to these items in the future. The Defendant consents to the destruction of any such firearms, explosives, destructive devices, grenades, and ammunition and agrees to hold the United States, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, disposition, and destruction thereof.

  c. With respect to any other property seized by the government in this case, the Defendant agrees that he will notify this Office in writing no later than 3 business days before his sentencing of any specific items belonging to him that he wants returned. The Defendant agrees that, absent such notification, any property seized in this case, including any items seized from 2303 Knox Avenue, Reisterstown, Maryland, 16925 York Road, Hereford, Maryland, 3 William Court, Sparks, Maryland, and 19621 Middletown Road, Freeland, Maryland will be deemed abandoned and will be destroyed in accordance with the policies, practices, and procedures of the law enforcement agency having custody thereof.

Defendant's Conduct Prior to Sentencing and Breach

13. a. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will

Rev. May 2018              8

cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

   b. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

14. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

   If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

## ATTACHMENT A

### STIPULATION OF FACTS
*United States v. Robert Swain*

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts, through surveillance images and video, emails, trash pulls, witness testimony, subpoenaed records, and other admissible evidence, beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

### Background

1. The Controlled Substances Act governs the manufacture, distribution, and possession of controlled substances in the United States, including narcotics that are prescribed by physicians and other licensed health care providers. The Controlled Substances Act and its implementing regulations set forth which drugs and other substances are "controlled substances." Controlled substances are assigned to one of five schedules, Schedule I, II, III, IV, or V, depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

2. Alprazolam is a synthetic analgesic that is classified as a Schedule IV controlled substance. It is available in generic form, but is typically sold under the brand name "Xanax."

3. Bitcoin is a form of digital currency (that is, a currency with an electronic-sourced unit of value). Unlike fiat currencies, such as the United States Dollar, Bitcoin do not exist in any physical form. Bitcoin exist solely as entries on a publicly available electronic ledger that records all Bitcoin transactions ever conducted. Unlike most fiat currency, Bitcoin is not issued or controlled by any government, bank, or company, but rather is generated and controlled automatically through computer software operating on a decentralized, "peer-to-peer" network. Bitcoin is a convertible currency meaning that it has an equivalent value in fiat or conventional currency, and users can exchange it for fiat currency. The exchange rate for Bitcoin is not determined by any government or centralized entity, but rather floats on the open market.

4. A "dark-web marketplace" is a marketplace on the dark web that individuals can use to buy and sell narcotics, among other illegal things. Users of dark-web marketplaces typically use Bitcoin or other digital currency as the means of payment for their transactions.

\*   \*   \*

5. Ryan Farace and the Defendant, Robert Swain, were and are residents of Maryland. Co-Conspirator 1 resided outside the State of Maryland.

6. From at least July 2015 until in or around February 2017, Swain knowingly combined, conspired, confederated, and agreed with Ryan Farace and Co-Conspirator 1, among others, to conduct and attempt to conduct financial transactions having an effect on interstate commerce which involved the proceeds of specified unlawful activity — to wit, the proceeds that Farace obtained from the conspiracy to manufacture, distribute, and possess with the intent to

distribute alprazolam in violation of 21 U.S.C. § 846 set out in Count One of the Superseding Indictment — while knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activating and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of 18 U.S.C. § 1596(a)(1)(B)(i).

7. Specifically, Farace used the pseudonyms "Penisbreath," "CaptainCum," "SargentSemen," and "WhaleScrotom," to contact Co-Conspirator 1 through dark web marketplaces and encrypted messages in order to exchange Bitcoin that Farace received as the proceeds of his drug trafficking for cash.

8. To place orders for cash, Farace transferred Bitcoins to Co-Conspirator 1. Co-Conspirator 1 then mailed or shipped packages of U.S. currency equivalent to the value of the Bitcoin received, less a fee, to mailing addresses located in Maryland that were provided to Co-Conspirator 1 by Farace. Farace used pseudonyms and dark-web marketplaces when contacting Co-Conspirator 1 so as to conceal his true identity.

9. In or about July 2015, Farace opened a post office box at the Cockeysville, Maryland post office in the fake name of "Randy Fabor."[1] He did so in order to conceal and disguise that it was, in fact, Farace who was receiving packages of U.S. currency from Co-Conspirator 1.

10. In or about November and December 2015, three packages of U.S. currency sent by Co-Conspirator 1 to Farace were intercepted and seized by law enforcement, including two packages of currency sent by Co-Conspirator 1 to Farace at the "Randy Fabor" post office box.

11. Farace subsequently asked a co-conspirator, Swain, to open in Swain's name post office boxes and private rental mailboxes so that Farace could conceal the fact that he was continuing to receive packages of currency from Co-Conspirator 1. At Farace's request, Swain authorized "Randy Fabor," a fake alias used by Farace, to receive mail at the mailboxes opened up by Swain. In all, Swain opened at least one postal mailbox (on or about December 3, 2015), and two private rental mailboxes (on or about December 5, 2015, and October 7, 2016) for Farace. Farace thereafter received packages of cash from Co-Conspirator 1, addressed to "Randy Fabor" and "Robert Swain," at these rental locations. Swain knew that Farace was receiving packages of currency at the mailboxes Swain had opened, and Swain also knew that the currency Farace received was the proceeds of Farace's drug trafficking.[2] During the course of the money laundering conspiracy, Farace received through the mails at least $5,015,000 in U.S. currency, which he had exchanged for Bitcoin earned from drug trafficking.

12. On or about February 16, 2017, Farace and Swain drove from Maryland to New Jersey so that Swain could collect $200,000 in U.S. currency that Farace had exchanged for

---

[1] On January 16, 2018, law enforcement officers seized a fake driver's license picturing Farace but reflecting the name "Randy Fabor" from Farace's home at 2303 Knox Avenue.

[2] Swain also knew that Farace was receiving packages of controlled substances at the rental mailboxes Swain had opened.

Rev. May 2018                                              12

Bitcoin earned from Farace's drug trafficking activities. During the in-person meeting on February 16, 2017, Swain provided a fictitious name to the individual he met and falsely stated that the Bitcoin and cash were his own. Farace and Swain took these measures to conceal and disguise the nature, location, source, ownership, and control of the drug trafficking proceeds.

13. Farace and Swain later attempted to exchange with the same individual Bitcoin that Farace had earned from drug trafficking for $400,000 in U.S. currency. However, this second attempt was unsuccessful.

14. Swain received at least $30,000 in proceeds from the money laundering conspiracy.

SO STIPULATED:

_____
Dana J. Brusca
Zachary B. Stendig
Assistant United States Attorneys

_____
Robert Swain
Defendant

_____
Jonathan Van Hoven, Esq.
Counsel for Defendant